Commonwealth ex rel. Johnson, Appellant, *v.*
Russell.

Argued January 10, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*David Rudovsky,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1968:

On February 11, 1948, Albert Johnson, the petitioner in this case, appeared in court to answer four bills of indictment: one charging him with aggravated robbery, another, burglary with intent to rob and ravish, the third with assault and battery, and the fourth with unlawful possession of burglary tools. He pleaded guilty to the indictment on aggravated robbery and not guilty on the other charges. He was tried, with counsel representing him, by the presiding judge, without jury, and found guilty on all the charges to which he had pleaded not guilty. The court sentenced him on all the indictments to a term of imprisonment of not less than 13½ years nor more than 27 years, beginning as of February 2, 1948.

On August 2, 1962, he was paroled for the balance of his maximum sentence to end February 2, 1975. On September 16, 1962, only six weeks after being paroled, he was arrested and later indicted on several charges. He pleaded guilty to aggravated robbery, assault and battery and aggravated assault and battery by cutting and not guilty to assault and battery, aggravated assault and battery with intent to ravish and indecent assault. He was found guilty of indecent assault, but not guilty of assault and battery with intent to ravish. He was sentenced on the aggravated robbery charge to

a term of not less than 10 years nor more than 20 years and sentenced on the indecent assault charge to a term of not less than 1 year nor more than 2 years, the sentences to run concurrently with the sentence on the aggravated robbery charge.

The Pennsylvania Board of Parole ordered him recommitted as a convicted parole violator to serve out the original sentence, to be followed by the sentences imposed for the crimes committed in 1962.

On June 7, 1964, Johnson sought out a writ of habeas corpus alleging violation of his constitutional rights at the 1948 proceedings, claiming that he did not have effective representation of counsel during the 1948 trial and that his guilty pleas were made involuntarily and without assistance of counsel. The petition was denied and Johnson appealed to the Superior Court. The Commonwealth moved the matter be remanded for an evidentiary hearing which was done. After the hearing the hearing judge dismissed the petition for writ of habeas corpus and the Superior Court affirmed per curiam.

Allocatur was allowed by this Court. Our study of the record leads inevitably to the conclusion that Johnson was ably and properly represented by counsel. At his trial in 1948 Johnson took the stand in his own defense and his testimony amounted to a confession and admission of burglary and robbery, nor did he deny the assault with intent to ravish. His testimony also coincided with his guilty pleas which he now contends were improperly obtained when, he says, he did not have assistance of counsel. Even his testimony at the hearing on his petition for habeas corpus accorded with the testimony he gave at the trial and at the time of his prior plea of guilty. During that hearing he admitted he had "burglarized" the house, that he had struggled with his victim and had

had a "tussle" with her. His prior pleas of guilty thus could not have prejudiced him since his testimony in open court and under oath confirmed the pleas. *Commonwealth ex rel. Adderley v. Myers*, 418 Pa. 366.

He claims further that he was deprived of effective assistance of counsel because his counsel was appointed on the same day as the trial. The evidence of his guilt was overwhelming. His victim, a woman 68 years of age, gave a full description of him to the police and later positively identified him as her assailant. She testified that she found him in her home, that he demanded money and submission to his lust, that he choked and struck her, ripped off her night clothing, seized her handbag and fled. Approached by a police officer several days later, he took to his heels but was apprehended. It is as clear and as unrebuttable as an arithmetic solution that Johnson was convicted because of the evidence and not as the result of any alleged ineffective assistance of counsel. We thus apply the ruling laid down recently in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599 (decided November 14, 1967) that shortness of time for counsel to prepare for trial does not of itself constitute ineffective assistance. In such a situation the burden still remains on the prisoner to demonstrate constitutional deprivation. In meeting this burden, Johnson wholly failed, as the record decisively establishes. The record is entirely convincing that Johnson's convictions and the sentences imposed resulted from evidence properly introduced and which confirmed his guilt not only of the charges on which he chose to stand trial but also those to which he voluntarily pleaded guilty.

Justice ROBERTS has filed a dissenting opinion which, it is to be feared, unless replied to, may do damage to the cause of effective justice in the criminal courts of the Commonwealth and dissuade attorneys

from willingness to defend in impecunious cases. Justice ROBERTS goes to considerable lengths in attacking the professional actions of the attorney who represented the defendant, asking why he didn't do this, and why he did do that. It is very easy for one, and especially a judge, 20 years after a trial, to sit back in his easy chair and pick out supposed flaws in the actions of defense counsel. A reliable attorney acts according to the situation as he sees it and, so long as justice is done, he should not be posthumously indicted, as is being done in this case in the **dissenting opinion**.

Moreover, Justice ROBERT'S analysis of the situation is not a correct one. He says that there was no indication that the defendant Johnson had waived his right to counsel when he pleaded guilty to the charge of assault with intent to rob and robbery. But the record shows, as already pointed out, that during his trial when he was in fact represented by counsel, the defendant took the stand and under oath admitted to burglary and robbery, his testimony thus being a reaffirmance of his plea of guilty. Even at his habeas corpus hearing, the defendant conceded that he had "burglarized the house," and that he had had a "tussle" with his victim. Since Johnson at the trial and at the habeas corpus chose to reaffirm his guilt *while he had counsel*, it seems like blowing soap bubbles to argue now that when he first made his formal plea he may not have had counsel.

Justice ROBERTS states that the Majority Opinion "distorts" the ruling in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599. But here we have more soap bubbles. There is no distortion in the Majority Opinion because it is based on what Justice ROBERTS himself said in the *Maroney* case, namely, " 'The mere allegation of short notice to a defendant

and short conference with counsel is not alone self-sustaining. . .' The length of counsel's conversation with his client is thus but *one* of the factors which we must evaluate in light of the nature of the charge, the issues presented, the availability of witnesses, etc., to determine whether the course chosen by counsel had any reasonable basis when compared with the alternatives available."

Thus the test in determining sufficiency of time in a lawyer's preparation for a trial or hearing is *reasonableness*. The record smashingly shows in this case that whether Johnson's counsel had talked with his client an hour or five days, the facts remained the same. Johnson *admitted* his several crimes. Certainly Justice ROBERTS does not suggest that in the face of avalanching evidence of guilt, defense counsel must still attempt in some way to circumvent the facts of culpability.

The uncontested evidence reveals the commission of a bold and shocking crime. Mrs. Mary B. Simpkins, a 68-year old woman, was in bed in her home when the defendant Albert Johnson broke into the house in the dead of the night. He demanded money and gratification of bestial desires, struck her with his fists and choked her. He ripped off her pajamas, seized her handbag, and fled. This is all uncontradicted.

Yet, Justice ROBERTS wants to know why defense counsel did not explore Mrs. Simpkins' opportunity to observe the defendant in view of the fact that she said that her bedroom was illuminated by "my little light." Counsel should have asked Mrs. Simpkins, Justice ROBERTS says, "the location of the 'little light' or the degree of illumination afforded thereby, how long appellant was in the house, etc."

Why? The defendant himself acknowledged that he was the one who had broken into Mrs. Simpkins' home

(see the transcript, that the dissenting Justice attached to his opinion) : "Q. What were you doing in that house with the lady? A. I went in there not to hurt anyone, just breaking in."

In view of this statement by the *defendant himself,* wouldn't it have been ridiculous for defense counsel to attempt to cross-examine the victim on the matter of the "little light"? Is it not also ridiculous to contend (as Justice ROBERTS does) that under those circumstances the victim's identification was too weak to afford a basis for defendant's arrest, that her statements to the police were hearsay and, therefore, defendant's counsel should have explored the possibility that "the arrest may well have lacked probable cause".

The dissenting Justice finds fault with counsel's limited cross-examination of the prosecution witnesses. Many a client has been hanged because his attorney tightened the noose around the defendant's neck by extended purposeless cross-examination. Counsel's limited cross-examination in the case at bar was very probably based on his unwillingness to take a chance of even more damaging evidence being elicited since the probability of favorable evidence was very slight, if not nonexistent entirely.

Justice ROBERTS complains also that "counsel failed to make any suggestion as to possible mitigating circumstances and no plea on behalf of the client was made." Here again, he assumed that such mitigating circumstances existed. What were they? They can't be conjured up out of thin air.

And it is another soap bubble to say no plea was made on behalf of the defendant. The implorations of counsel for a light sentence hardly ever become part of the record. Nor is it apparent that a light sentence would have been in order, considering the flagrant crimes that had been committed.

Even the defendant does not point to any mitigating circumstances which should have been highlighted. Or, indeed, any evidence favorable to himself. At the trial he heard Mrs. Simpkins describe his breaking into the house, his striking her, his demanding money and submission to his lewd demands. As he continued to beat her, she screamed and he exclaimed: "Shut up or I will knock you out." She related all this in his presence, how he attempted to strangle her and continued beating her. Her injuries necessitated hospitalization.

Certainly, if there were any untruth in Mrs. Simpkins' testimony, here would have been the time for the defendant to so declare. His attorney gave him every opportunity to deny the damning accusation. He asked Johnson: "What were you doing in that house with the lady?" What was his reply? "I went in there not to hurt anyone, just breaking . . . to get the money." In other words, just a little burglary and robbery which could have ended in murder. He made no denial of the terrible deeds the victim charged him with. And yet, Justice ROBERTS would now have the world believe that, somehow, this night marauder, this brute, this would-be rapist, this burglar and thief, was taken advantage of.

Incidentally, and not too incidental either, when Johnson was released in 1962, after having been in the penitentiary for 14 years, he again took up a life of crime. Again he committed robbery, again he attempted to ravish. Once again he was sentenced, but he made no complaint. Then, nearly 20 years after the proceedings of 1948, he claimed that his legal rights had been violated at that time. In the long interval he had never complained to anyone that he had not been properly represented in 1948 or that he had been legally mistreated.

To order a new trial in this case, as urged in the dissenting opinion, would make a mockery of the law and a travesty of justice. It would generate havoc in the administration of criminal justice, and no one asserted that proposition more vigorously than Justice ROBERTS himself in the case of *Commonwealth ex rel. LaRue v. Rundle,* 417 Pa. 383. The defendant there had complained that his attorney had not rendered effective assistance at the trial. He said that his counsel had failed to "strenuously oppose the conflicting evidence." In rejecting the defendant's contention, Justice ROBERTS said: "Surely, the test for determining whether counsel's assistance was constitutionally ineffective may not be predicated on so unsubstantial a standard as the subjective preference of the accused. Nothing could be more unsatisfactory as a means of acceptable, professional competence than the convicted defendant's evaluation of the trial skill, judgment and efforts of counsel exerted in his behalf. The right to counsel and the effective assistance of counsel does not vest the petitioner with the absolute privilege of retroactively assessing the quality of his counsel's trial representation against his present feeling as to what might have been better strategy. . . It may be said without exaggeration that such attacks may well discourage trial lawyers from undertaking the defense in criminal litigation. Were this to occur, it would be most detrimental to the current efforts being made to improve, expand and to make generally available the highest quality of defense representation attainable so that our criminal trials may be conducted with the utmost possible fairness. In that event, not only the criminal trial bar would suffer, but perhaps even more importantly, the greatest harm would necessarily fall upon those accused of crime."

Thus, the most effective rejoinder to Justice Roberts' dissenting opinion are his own words as spoken in *Commonwealth ex rel. LaRue,* here quoted, and which he reaffirmed in *Mullenaux v. Myers,* 421 Pa. 61 (1966).

Order affirmed.

Mr. Justice Jones and Mr. Justice Cohen concur in the result.

---

Dissenting Opinion by Mr. Justice Eagen:

The record fails to establish that Johnson was represented by counsel at the time in 1948 when he plead guilty to the indictment charging aggravated robbery. Nor is there any indication that he waived his constitutional right to such assistance. In view of this, I am reluctantly compelled to conclude that the judgment entered on this particular conviction must be set aside and a new trial granted.

---

Dissenting Opinion by Mr. Justice Roberts:

The record of appellant's 1948 nonjury trial, consisting of seven and one-half typed pages, is sufficiently short that I have reproduced it verbatim in the appendix to this dissenting opinion. In its brief, the Commonwealth asserts that Johnson entered a guilty plea on indictment No. 116 charging him with assault with intent to rob and robbery while pleading not guilty to the remaining three indictments. Two issues are thus presented: was appellant represented by counsel at the time he entered his guilty plea and was counsel's trial representation on the remaining indictments constitutionally effective.

Johnson was entitled to representation by counsel at the time his plea was entered. *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439

(1964); *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 204 A. 2d 446 (1964). As the record reproduced in the attached appendix demonstrates, there is absolutely no indication that Johnson's plea was entered with the advice of counsel or that, in fact, the trial court ever accepted this plea. Nor did the Commonwealth make any attempt at the post-conviction hearing to demonstrate that Johnson did have counsel or waived his right to representation. We are thus compelled to decide, the majority opinion notwithstanding, that appellant was not represented at the time his plea was entered. See *Commonwealth ex rel. O'Lock v. Rundle,* supra at 523, 204 A. 2d at 443; *Commonwealth ex rel. Goodfellow v. Rundle,* supra at 533, 204 A. 2d at 448: "Where, as here, the conviction record does not affirmatively show the accused was offered counsel and declined counsel after appropriate inquiry by the court, the burden may not be placed upon the accused to show that he did not intelligently and understandingly waive counsel. That burden rests upon the Commonwealth."

\* \* \*

"[T]he conviction or hearing record must show that the accused was advised or was aware of his right to counsel. . . . Unless waived, if counsel is not afforded, due process is violated. . . . Waiver may not be found from a mere plea of guilty. . . . Nor may it be presumed from a silent record." This record is totally devoid of any indication that Johnson was represented and the Commonwealth has produced nothing to discharge its burden of demonstrating a waiver. Appellant is therefore entitled to a new trial on the robbery indictment.

I now turn to appellant's claim of ineffective assistance of counsel. The holding of *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967), our most recent decision involving a claimed

ineffectiveness of counsel, is totally distorted by the majority. Rejecting a contention that mere shortness of time to prepare *per se* constitutes ineffective assistance,[1] we stated that an examination of the record and an evaluation of the alternatives available to counsel was the key to a resolution of an ineffectiveness claim (427 Pa. at 604, 235 A. 2d at 352): "Our task in cases of this nature therefore encompasses both an independent review of the record . . . [citation omitted] and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. . . . 'Facts are alleged from which it would appear that these potential defenses would have suggested themselves to a reasonably diligent trial counsel. The defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice.' We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." (Emphasis in original.) I am convinced that counsel's stewardship cannot pass constitutional muster.

The totality of counsel's efforts on behalf of his client consisted of one question on cross-examination of one of the Commonwealth's four witnesses, a feeble attempt to demur to one charge, and two questions of his client. Throughout the trial there were numerous occasions when any conscientious lawyer, even one with no prior knowledge of the facts of this case, would have adopted any of several available alternatives to foster

---

[1] Appellant's testimony at the habeas corpus hearing that counsel was not appointed until he entered his first not guilty plea is uncontradicted.

his client's interests. I think a fair characterization of this record presents a picture of an attorney going through the motions with disregard for the fate of his client or the sufficiency of the Commonwealth's case. Under these circumstances, I am convinced that counsel's actions had no reasonable basis designed to effectuate his client's interests.

The Commonwealth's star witness, Mrs. Simpkins, testified that the events occurred at night in her bedroom illuminated only by "my little light." With the Commonwealth's case turning on the strength of this identification, counsel made no attempt to explore whether the conditions were such that the identification was accurate and reliable. No questions were asked as to the location of the "little light" or the degree of illumination afforded thereby, how long appellant was in the house or the sufficiency of the witness' opportunity to observe appellant.

The Commonwealth sought to corroborate this story by relating the incidents surrounding appellant's arrest. Two police officers testified on the crucial identification issue that Mrs. Simpkins had made a positive identification. Not only did counsel fail to explore the circumstances under which the identification was made, but he also failed to object to this testimony on the grounds of hearsay. No doubt, Mrs. Simpkins probably said something on the order of "this is the man who robbed me" when she made the identification—this statement was hearsay and most likely formed the basis of the officers' testimony. Furthermore, appellant was arrested 17 days after the event under circumstances which indicate that the arrest may well have lacked probable cause. Yet no examination was undertaken on this issue. Finally, appellant's conviction for possession of burglary tools was based on an alleged confession which appellant

maintains was coerced. Again, counsel made no attempt to probe the circumstances under which this confession was made, nor did he inquire about appellant's second statement.

At the conclusion of the Commonwealth's case, counsel did demur to the burglary tools indictment. The court then stated that the arresting officer had testified that he (the officer) saw appellant "scanning the back door of a house" and counsel promptly withdrew the demur. Yet the testimony of the arresting officer which must have been given only a few moments before made no mention of this activity on appellant's part. Counsel did not endeavor to correct the court's recollection.

Ineffectiveness is perhaps most strikingly demonstrated by the sentence portion of this record. Counsel failed to make any suggestion as to possible mitigating circumstances and no plea on behalf of the client was made. Furthermore, to say the least the sentence lacked clarity yet counsel did not attempt to obtain a clarification. According to the Commonwealth, appellant was never sentenced on bill No. 118 which charged aggravated assault and battery and assault and battery with intent to ravish. Yet the trial record indicates that appellant was given two and one-half to five years on that indictment. The sentence also leaves unclear whether the trial court intended the one year sentence for possession of burglary tools to run consecutively with the other sentences or was merely adding another year to appellant's total sentence for good measure.[2]

---

[2] That this sentence is confusing is best demonstrated by the two lower court opinions in this case. In the first, Judge McClanaghan stated that appellant was sentenced to a term of ten to twenty years. The Superior Court on appeal remanded this case for an evidentiary hearing. Judge Gold, the hearing judge, stated:

While perhaps none of these omissions by counsel would individually be sufficient, I am convinced that the totality of this trial leaves no doubt that appellant's representation was little more than token. That Johnson may have in fact been guilty of all the crimes charged, a factor which the majority obviously regards as significant, is, of course, irrelevant as to whether appellant was represented when his guilty plea was entered and, except as it might bear upon counsel's strategy, irrelevant as to the adequacy of counsel's representation. See *Gideon v. Wainwright,* 372 U.S. 335, 344-45, 83 S. Ct. 792, 796-97 (1963); cf. *Rogers v. Richmond,* 365 U.S. 534, 540-41, 81 S. Ct. 735, 739-40 (1961). Furthermore, this case requires a repetition of Mr. Justice FRANKFURTER'S often quoted admonition: "It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people."[3]

I dissent.

---

## APPENDIX

### COMMONWEALTH'S EVIDENCE

#### MARY B. SIMPKINS, sworn.

BY MR. BELOFF [for the Commonwealth] : Q. Mrs. Simpkins, how old are you? A. 68. Q. Where do you live? A. 3031 Dakota Street. Q. In Philadelphia? A. Yes, sir. Q. On the 13th of January of this year did you see this defendant? A. Yes, sir. Q. What time of the day or night was it and where did you see

---

"Relator was . . . sentenced to a term of 10 to 20 years on Bill No. 116, 2½ to 5 years on Bill No. 117 and 1 to 2 years on Bill No. 119 . . ."

[3] *United States v. Rabinowitz,* 339 U.S. 56, 69, 70 S. Ct. 430, 436 (1950) (dissenting opinion).

him?  A. Well, we were—I was waiting for my son to come in from work.  His wife was there.  After he came in we had a cup of cocoa and they left me about 12:20.  Q. Past midnight?  A. Yes, sir.  I went up and got undressed and fixed little things around my room. Then I went into my front room and there was quite a lot of heat coming out of the register, so I thought I better go down and see if my son fixed the heater for me.  I went halfway down the cellar steps and looked and went back upstairs and went to bed.  I turned my light out and I don't know whether I fell into a doze or not, but I heard someone walking around downstairs.  My husband was away at work and owing to the bad weather I thought he came home, which would have given him time to come in that time of the night.  I said, "Who is down there?  What are you walking around for?", nobody answered me, but gently someone walked up the steps.  As they walked in the room, this colored man walked in.  Q. Were the lights on in your room?  A. My little light.  I turned it on when I heard this noise.  When I looked up I said to him, "Where did you come from?  You get out of here. Get out of here as quick as you can.  Get out the same way you came in."  He stood and looked at me while I said it, and he said, "Give me your money."  I said, "I have no money," and by that he hit me on the right cheek with his fist.  Then he stood there and hit me again.  I kept hollering and he said, "Shut up or I will knock you out."  I said, "Don't you dare knock me out."  He said—he leaned down to me and he said, "Let us have a little pussy."  I said, "Don't you dare touch me," like that.  I said, "Get out of here."  By that he choked me twice and he hit me again in the face.  Finally he grabbed my pajamas and tore them completely off of me.  He grabbed my handbag which was like a knitting bag—he grabbed that and took it

with him and left. Q. Did you see your handbag again? A. No, I never seen it since. Q. Are these the pajamas you were wearing? A. Yes. These are the pajamas he tore off me. Q. You were alone in the house? A. Positively alone. No one was there.

CROSS-EXAMINATION

BY MR. JOHNSON [for the appellant] : Q. Is this the man that was in your bedroom? A. Yes, sir.

EDWARD J. CASSIDY, No. 2403, sworn.

BY MR. BELOFF: Q. Officer Cassidy, did you arrest this defendant? A. Yes, sir, I did. Q. When and where? A. On January 30, 1948, about 12:45 A.M. upon returning home from work and entering into the street in which I live, Folsom, I noticed a colored man at 2620 Folsom Street. The man must have noticed me at the same time and he ran around the corner fast and I ran around after him and apprehended him at 26th and Aspen. I asked him what he was doing in the back street and he said, nothing. I searched him and took off of him a flashlight. Asked him what he was going to do with the flashlight. He said anything he found he was going to steal. Q. Then you brought him into the station? A. I arrested him in the Ninth District. Q. Did you then have knowledge of the complaint of Mrs. Simpkins, the attack upon her? A. Yes, sir. He was wanted in the 31st District at that time. Q. It was the result of the arrest you made that Mrs. Simpkins was notified and identified him? A. That is right.

(NO CROSS-EXAMINATION)

DETECTIVE LEO A. BOYLE, No. 155, 7th Detective Division, sworn.

BY MR. BELOFF: Q. Detective Boyle, can you add anything to what has been said? A. Yes. On the 13th

of January, about 1:55 a.m. was when the original call was received that someone was in the house at 3031 West Dakota Street. There was two red cars dispatched there. After they got there they found the complainant had been beaten up, and they took her to the Women's Homeopathic Hospital where she was treated and detained for six days. As a result of the information—she gave us a description, and knowing that the defendant was in the neighborhood, had just gotten out from the Reformatory, we made an investigation. After he was arrested Officer Cassidy informed the district about it. Then we brought him up from the County Prison and confronted him with the complainant where he was positively identified. He later made a statement admitting everything, but the assault with intent to ravish. This is the pajamas.

(No Cross-Examination)

Mr. Beloff: The pajamas and the light are offered in evidence.

Detective Joseph P. Hartzell, sworn.

By Mr. Beloff: Q. Detective Hartzell, can you add anything? A. No, sir. He covered everything.

Commonwealth Rests

Mr. Johnson: The defendant demurs to the evidence so far as Bill 119 is concerned, possession of burglar tools. The flashlight offered in evidence is the type of flashlight carried by anyone and is by no means confined to burglary. The Court: Any weapon that can be used improperly becomes a burglar tool when used for that purpose. If he is using the flashlight for finding open doors or windows, it becomes a burglar tool until the Supreme Court says it isn't. Mr. Johnson: There is no evidence he used it for that

purpose. THE COURT: The first officer said he was scanning the back door of a house when he saw him, didn't he? And then he ran away. MR. JOHNSON: I withdraw the demurrer then.

BY MR. JOHNSON: (Addressing the Defendant.) Q. How old are you? A. 21. Q. What were you doing in that house with the lady? A. I went in there not to hurt anyone, just breaking in. BY THE COURT: Just breaking in for what? A. To get the money. I didn't want to hurt nobody. Q. Did you ever work for a living? A. Yes, sir, I worked. Q. How many times were you arrested as a juvenile? A. About ten times— eight times. Q. Did you ever go to Glen Mills, or the Reformatory? A. No, sir. Q. Of course not. That is why you are here today.

THE COURT: Ten to twenty on the burglary. Two and a half to five on the attempt to ravish and one year on the burglar tools. Can you count that up? Twelve and a half to twenty-five. Then a year flat after that. Penitentiary.