## Commonwealth *v.* Stokes, Appellant.

Argued November 22, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Anne Johnson,* Assistant Defender, with her, *Francis S. Wright, Jr.,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 19, 1973:

Appellant, while represented by counsel, waived a jury trial and was found guilty of two counts each of

aggravated robbery and aggravated assault and battery. He was sentenced to a term of imprisonment, and an appeal to the Superior Court resulted in a remand for the filing of post-trial motions. Those motions were filed, argued and dismissed by the trial court, which then reimposed the original sentence. A second appeal to the Superior Court resulted in an affirmance of the judgment of sentence, *Commonwealth v. Stokes*, 221 Pa. Superior Ct. 721, 288 A. 2d 543 (1972), and we allowed an appeal.

Only one question is raised on appeal, appellant contending that his waiver of a trial by jury was not knowing and voluntary. Rule 1101, Pa. R. Crim. P., requires an on-the-record colloquy in jury trial waiver situations, and also requires the trial judge to "ascertain from the defendant whether this is a knowing and intelligent waiver."

The record in this case contains a long colloquy in which the trial court attempted to satisfy itself that appellant's waiver was knowing and intelligent. That colloquy, in its entirety, is as follows: "BY MR. DEUTSCH (defense counsel): Q. Mr. Stokes, you have an absolute right to have a jury trial. A jury trial would consist of twelve individuals who would decide your guilt or innocence. All twelve of them would have to agree to your guilt beyond a reasonable doubt before you could be convicted. Do you understand that? BY THE DEFENDANT: A. Yes. Q. You also have the right to be tried in front of his Honor, the judge sitting, without a jury and have his Honor decide the facts and the law of the case as well as your guilt or innocence. Do you understand that? A. (indicating yes) Q. Is it your decision to be tried in front of his Honor sitting without a jury? Do you want to have the judge hear the case without a jury? A. No. I really don't know what you are talking about. I don't know nothing. BY THE COURT: Q. How far did you go in school,

Mr. Stokes? A. Seventh grade. Q. What is that? A. Seventh grade. Q. Under the Constitution of this country, every man has a right to a trial by jury meaning that twelve men of the community that you live, in Philadelphia, would have a right to pass upon your innocence or your guilt. A. Yes. Q. They would have to be unanimous as to whether you are guilty or innocent. If one man found you were not guilty, then you could not be convicted. Now, you may, by the same token, waive that right to have twelve men decide whether you're guilty or not and you can have the judge do that, both as a jury and as a judge, applying the law to the facts as he sees them. Now, in order to do that, you must voluntarily waive your right to be tried by a jury. Do you understand me at this point? A. Yes. Q. Now, the decision is up to you whether or not you are waiving your right to be tried by a jury. A. I'd rather be tried by the judge. I don't want to get tried by the twelve people. Q. You don't want to be tried by twelve men and women; is that what I heard you say? A. Yes. BY MR. DEUTSCH: Q. Mr. Stokes, do I understand you correctly in saying that you wish to be tried by the judge alone, without a jury, without the twelve men and women? A. Yes, yes. Q. Is that your own decision? A. Yes. Q. Has anybody made any promises or threats at all to get you to make this decision? A. No, sir. Q. All right, sir. How old are you? A. Twenty. Q. How far did you go in school? A. Seventh grade. Q. Do you read and write the English language? A. Yes. Q. Have you ever been in a mental institution or have you ever been treated for any mental disorders? A. I was going to school. Q. That wasn't a mental institution, was it? A. Yes. It was supposed to be. THE COURT: Is that the father? MR. DEUTSCH: Yes, your Honor. Here is his father. THE COURT: He appears to me, and I am saying this for the record, to be rather immature. I would like him to

speak with his father and then I will further interrogate the defendant. Will you explain, Mr. Deutsch, what you have been trying to explain to Mr. Stokes, would you explain to his father what we have been attempting to explain to Mr. Stokes, the defendant? MR. DEUTSCH: Yes, I will explain, your Honor. (Five minute recess) MR. DEUTSCH: Your Honor, for the record, I spoke to the defendant in his father's presence and I explained to both of them the difference between a jury trial and a waiver and what the defendant's rights were, that the decision was their's [sic]. I have advised them to waive the jury trial and I believe that both of them are satisfied to follow my recommendation. THE COURT: Did you make clear to the defendant and his father what the rights were to have a jury trial? You explained all that in detail? MR. DEUTSCH: I explained what a jury trial was approximately six times, your Honor. THE COURT: Do you have any questions, Mr. Gordon? MR. GORDON: Yes, just briefly. BY MR. GORDON: (assistant district attorney) Q. Mr. Stokes, after your counsel explained to you in detail both on the record and off the record what a jury trial is and what you're [sic] rights are, is it your own voluntary decision on the advice of your attorney to waive your right to a jury trial and to be tried before the judge alone; is that your decision? BY THE DEFENDANT: A. I'd rather be tried by a jury trial. Q. You want a jury trial? BY MR. DEUTSCH: Q. Mr. Stokes, did I advise you to be tried in front of the judge without a jury? A. (no answer) Q. Did I explain to you why? A. Yes. THE COURT: What do you want? BY MR. DEUTSCH: Q. Do you want to follow my advice and be tried before the judge without a jury? A. Yes. I will take your advice. BY THE COURT: Q. In answer to the question that was put to you by the District Attorney, are you making this decision voluntarily? A. Yes. Q. And, it is your wish then, you are voluntarily deciding to be

tried by me as a judge and a jury and waiving your right to be tried by twelve men and women; is that your decision? A. Yes. BY MR. DEUTSCH: Q. Mr. Stokes, I asked you before if you had ever been in any mental institution and you replied to me that when you were approximately sixteen years old; is that correct? Were you in an institution? A. Yes, sixteen. Q. And, you said it was because—you explained to me when I was speaking with your father that it was due to slow learning? A. Slow learning because I didn't go to school, that is why. Do you see what I mean? They sent me there because I didn't go to school. Q. And, that happened when you were sixteen? A. Yes. Q. And, have you been all right since then? A. Yes, I have been all right. Q. And, you haven't been under any mental treatment or psychiatric treatment since the age of sixteen; is that correct? A. No. Q. And, you are twenty years old today; is that correct? A. That is right. Q. And, do you understand why you are here today? A. Yes, I understand why I am here today. Q. Do you want to tell the Court why you are here today? A. They say I robbed somebody. Two men got robbed, to find out did I do it or not. THE COURT: Do you have any other questions? MR. GORDON: No, your Honor. THE COURT: The Court will accept the waiver."

While the record might be read to indicate that appellant made a knowing and voluntary waiver of his right to a trial by jury, we believe that the record more clearly indicates confusion on appellant's part. The constitutional right to trial by jury, as with other constitutional rights, will not lightly be deemed to have been waived. In fact, courts indulge every reasonable presumption against waiver of such fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Commonwealth v. Garrett*, 439 Pa. 58, 266 A. 2d 82 (1970). A reading of the colloquy in the instant case indicates that although appellant had been advised

in open court by his counsel and by the court of his right to a trial by jury and of the difference between a jury trial and a nonjury trial and had ostensibly assented to a nonjury trial, the court, finding appellant "to be rather immature", asked that a further off-the-record explanation be made to him in the presence of his father. Thereafter, appellant's trial counsel gave further explanations to appellant, in the presence of appellant's father, and reported to the court that he had given the explanation "approximately six times". Despite the manifold explanations, in response to a question by the assistant district attorney, appellant said: "I'd rather be tried by a jury trial". The process began again, and in response to leading questions, appellant eventually assented to a waiver on the advice of his trial counsel.[1]

---

[1] It should be noted that the decision to waive a jury trial is ultimately and solely the defendant's. See American Bar Association Project on Standards For Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, the Defense Function §5.2(a)(ii) (Approved Draft, 1971). Although defense counsel has the professional and ethical obligation to advise his client as to the consequences of such a waiver, counsel does not have the duty or the right to insist that the defendant adhere to counsel's suggestion. As the Commentary following Standard 5.2(a) points out: "In making each of these decisions— whether to plead guilty, whether to waive jury trial, and whether to testify—the accused should have the full and careful advice of his lawyer. *Although counsel should not demand that his own view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client. Ultimately, however, because of the fundamental nature of these three decisions, crucial in such basic matters governing his own fate, the decisions on these matters belong to the accused.*" (Emphasis supplied.) Counsel's action here, on this record, obviously does not conform to this standard. Further, it was improper for counsel to disclose, in open court, the advice he had given his client. The coercive effect of such disclosure is apparent from the record.

We believe that the record is inadequate to show a knowing and intelligent waiver of a basic and fundamental constitutional right. Instead, the record shows a lack of understanding by this poorly educated product of a school for slow learners, who had never been involved in a criminal proceeding. The vacillation of appellant during the course of the colloquy more clearly supports that view of what occurred than a knowing and intelligent waiver.

The order of the Superior Court is reversed, the judgment of sentence is reversed, and the case is remanded to the Court of Common Pleas, Trial Division, of Philadelphia, for a new trial.

Mr. Chief Justice JONES dissents.