394 A.2d 528

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles T. HOOKS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1978.

Decided Nov. 18, 1978.

G. William Bills, Jr., Pittsburgh, Court-appointed, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

EAGEN, Chief Justice.

Charles T. Hooks, appellant, was convicted of murder of the third degree following a nonjury trial in Allegheny County. Post-verdict motions were filed by counsel from the public defender's office. Because the motions alleged,

inter alia, ineffectiveness of trial counsel who was also from the public defender's office, the court appointed new counsel not associated with this office to represent Hooks, conducted a hearing, and heard evidence relevant to the issues, including ineffectiveness of trial counsel. Subsequently, the post-verdict motions were denied and judgment of sentence was imposed. This appeal followed.

Appellant argues he did not effectively waive his right to a trial by jury because the colloquy included ". . . several vacillations . . . show[ing his] confusion and lack of understanding" and because he had a limited ability to understand the colloquy proceeding due to a "limited educational background and history of alcoholism," which had caused brain damage. The argument constitutes both a facial attack on the colloquy as not evidencing an effective waiver, and an attack on the waiver as being ineffective for reasons outside the colloquy record as evidenced by testimony presented during the hearing on post-verdict motions. Cf. *Commonwealth v. Dyson*, 249 Pa.Super. 503, 378 A.2d 408 (1977).

In support of his facial attack argument, appellant relies on *Commonwealth v. Stokes*, 450 Pa. 167, 299 A.2d 272 (1973), and *Commonwealth v. Hooks*, 450 Pa. 562, 301 A.2d 827 (1973).[1]

In *Commonwealth v. Stokes*, supra, we held the colloquy was inadequate to establish an effective, i. e. knowing and intelligent, waiver of the right to jury trial because the record indicated: (1) a lack of understanding by a defendant who was a product of a school for slow learners and who had never before been involved in criminal proceedings; and, (2) vacillation by the defendant during the course of the colloquy. Specifically, in *Commonwealth v. Stokes*, supra, the record showed the following: (1) a defendant, who during the colloquy, told defense counsel, who was explaining what the waiver of a jury trial entailed, that he did not know what defense counsel was talking about; (2) a defendant with a seventh grade education who was "immature" at

1. Hooks in the cited case was not the same individual here involved.

twenty years of age; (3) a defendant, who told the court, after an off-the-record explanation of the right to trial by jury given by counsel, that he would rather be tried by a jury and, almost immediately thereafter, said he would take counsel's advice to be tried without a jury; and, (4) a defendant who eventually assented to waive a jury trial only after the above occurred and then in response to leading questions.

In *Commonwealth v. Hooks*, supra, we held the record failed to establish an effective, i. e. knowing and intelligent, waiver of the right to a jury trial where the defendant, after evidencing an understanding of his right and desire to waive it in response to questions by his counsel, responded to a question by the court by saying he did not "really understand some of the things," and that "[s]ome of the things [were] still not clear to [him.]" We reasoned that, since "some of the things" which were unclear may have included his right to a trial by jury, the record was inadequate to establish an effective waiver.

Clearly, the facts instantly are markedly different from those in *Commonwealth v. Stokes*, supra, and *Commonwealth v. Hooks*, supra. Here the accused was sixty-one years of age at the time of the colloquy. He had an eleventh grade education and could read and write.

It is true that the appellant here, at the beginning of the colloquy in response to a question by the court as to whether he understood what a jury trial was, did indicate he did not ". . . know anything too much about a jury or nonjury, because [he had] never been in court but once," but thereafter, the court explained that guilt could be determined either by a jury or the judge; that both the federal and state constitutions guaranteed him a right to a jury trial; that the jury would consist of twelve persons selected by him along with his attorney and the prosecutor; that he had a right to challenge prospective jurors for cause and what a challenge for cause meant; that he would be allowed a certain number of peremptory challenges and the meaning of this; that the twelve jurors would be selected from a jury panel which had

been selected by the jury commissioners;[2] that a determination of guilt by a jury would have to be unanimous; and, that all twelve members of the jury would have to be satisfied the Commonwealth proved guilt beyond a reasonable doubt. Throughout this explanation, appellant unequivocably indicated he understood. The court then asked: "All right, sir, and knowing all this, do you wish to waive your right to a jury trial?" The following then occurred:

"[Appellant:] No, I don't want a jury.

"The Court: You don't want a jury. Well, that's what waive means, sir. You want to be tried by a Judge?

"[Appellant:] Yes.

\*　　\*　　\*　　\*　　\*　　\*

"The Court: Has anybody coerced you or forced you or tried to make you do this? Has anybody talked you into this, to waive your right to a jury trial and to be tried just by a Judge?

"[Appellant:] I would rather be tried by a Judge.

"The Court: I'm sorry?

"[Appellant:] I'd rather be tried by the Judge."

"The Court: By the Judge?

"[Appellant:] Yes.

"The Court: You'd rather be tried by a Judge?

"[Appellant:] Yes.

"The Court: Nobody's talked you into this; you want to do this on your own?

"[Appellant:] Yes.

"The Court: You know what voluntarily means?

"[Appellant:] Yes.

"The Court: You're voluntarily waiving your right to a jury trial; is that correct?

"[Appellant:] Yes.

"The Court: All right, sir, has anyone promised you anything for doing this?

**2.** Appellant does not specially argue this explanation was inadequate to advise him the jurors would be "chosen from members of the community (a jury of one's peers) . . . ." *Commonwealth v. Williams*, 454 Pa. 368, 373, 312 A.2d 597, 600 (1973).

"[Appellant:] No, sir.

"The Court: Any leniency or anything like that?

"[Appellant:] No, sir.

"The Court: Nobody at all?

"[Appellant:] No."

It was after this that the court accepted the waiver.

In *Commonwealth v. Hooks*, supra, the colloquy was concluded with an expression of uncertainty by the accused; such is not the case instantly. In *Commonwealth v. Stokes*, supra, the vacillations occurred prior to and after explanations of the right; again, such is not the case here. Instantly, appellant expressed at the beginning of the colloquy a certain amount of ignorance, but thereafter, as his rights were explained to him, he expressed a clear understanding thereof. Quite simply, there is present in this colloquy neither a vacillation as to a waiver of the right to a jury trial, *Commonwealth v. Stokes*, supra, nor an expression of uncertainty as to an understanding of his right, once it was explained to appellant, *Commonwealth v. Hooks*, supra.[3] Hence, appellant's facial attack is meritless since the colloquy establishes an effective waiver. Cf. *Commonwealth v. Williams*, supra.

■ In support of his argument that the waiver was ineffective for reasons outside the colloquy record, appellant cites no authority but simply relies on his testimony at the hearing on the post-verdict motions in which he said that his responses to the court during the plea proceedings were merely an attempt to "respect" the judge and to ". . . try to go along with the Court . . . ." The post-verdict motion court, which heard the testimony, apparently refused to credit the testimony which was its right.[4]

3. Hooks also executed a "Waiver of Jury Trial" form which comports with the form set forth in Pa.R.Crim.P. 1101.

4. The court did not specifically pass on credibility; but, had it credited this testimony, it would have had to afford relief which it did not do.

■ Finally, appellant relies on testimony to the effect that, at the time involved, he suffered from brain damage due to alcoholism. The testimony does not indicate the extent of brain damage, nor does it suggest the damage was so extensive as to render appellant incapable of effectively waiving his rights. Indeed, appellant's testimony at the post-verdict motion hearing, his responses during the colloquy, and his testimony at trial, all of which was responsive and coherent, are substantial proof that the alleged brain damage did not in any way interfere with his capacity to waive his right to a jury trial.

■ Appellant bore the burden of proving the constitutional infirmity of his prima facie valid waiver, see *Commonwealth v. Dyson*, supra, Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1978–79) [Hereinafter: PCHA § ——, 19 P.S. § ——]; and, quite simply, on this record he has failed to meet that burden.

Appellant next argues he was denied effective assistance of counsel because counsel failed to fully ". . . advise and discuss with [him] his waiver of jury trial" and because this failure was "unreasonable."

In *Commonwealth v. Boyd*, 461 Pa. 17, 30, 334 A.2d 610, 617 (1975), we said:

"Counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance of counsel only when 1) counsel interferes with his client's freedom to decide to waive a jury trial, cf. *Commonwealth v. Stokes*, supra, or 2) appellant can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of his right."

In an obvious reference to the second circumstance set forth in *Commonwealth v. Boyd*, supra, appellant claims a lack of advice by counsel was so unreasonable as to vitiate the waiver. In support of his claim, he relies on his testimony at the hearing on the post-verdict motions in which he stated that counsel spent only twenty to thirty minutes in conver-

sation with him prior to trial;[5] that counsel failed to advise him during that time of the elements of the crimes with which he was charged, of the possible penalties, and of the essential ingredients to a jury trial; and, that counsel only told him a nonjury trial would be shorter.

In this context, the burden of establishing ineffectiveness of counsel was on appellant. *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976); PCHA § 3, 19 P.S. § 1180–3. The hearing court found counsel was not ineffective in this regard. That conclusion is supported by the record. First, the court's opinion clearly indicates it did not credit appellant's testimony. Second, trial counsel testified at the hearing on post-verdict motions and, while confirming she spent approximately thirty minutes prior to trial with Hooks, cf. *Commonwealth ex rel. Johnson v. Russell*, 428 Pa. 440, 239 A.2d 399 (1968), she indicated she did explain the basic ingredients of a jury trial, the manner in which a jury would be selected, and the possible penalties involved. Third, while counsel testified she could not recollect whether she discussed the elements of the different crimes charged, appellant himself, during the colloquy, indicated she had explained the differences in the crimes charged. Appellant has failed in his burden. Cf. *Commonwealth v. Boyd*, supra.

Appellant next argues the trial judge erred in not *sua sponte* recusing himself from the trial of the case because of the following which occurred prior to the colloquy on the waiver of a jury trial:

"(Thereupon, on Monday, March 14, 1977, at 10:35 a. m., the within non-jury trial was convened as follows):

"The Clerk: Have your client stand, please.

"Thereupon, [Hooks and defense counsel] stood before the Court.)

"The Clerk: Hold up your right hand. You must know that you stand charged at Criminal Complaint 7608490–A in the Court of Common Pleas, Criminal Division, in and for the County of Allegheny: the first count, murder of

---

5. Appellant had prior contact with an investigator for trial counsel.

the first degree; the second count, murder of the third degree; third count, voluntary manslaughter; fourth count, involuntary manslaughter. You may put your hand down now. All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

"How will you plead, are you guilty or not guilty of the felonies with which you stand charged?

"[Appellant:] *Well, I have to plead guilty.*[6]

"(Thereupon, [Hooks and defense counsel] confer between themselves.)

"The Clerk: How will you be tried?

"[Appellant:] Non-jury.

"[Defense Counsel:] Non-jury.

"The Court: Okay. Mr. Hooks for our record, will you please state your name." [Emphasis added.]

Also, in a related argument, appellant asserts trial counsel was ineffective for failing to request the trial judge to recuse himself from the trial after having heard appellant say: "Well, I have to plead guilty." We find no merit in appellant's position.

The trial judge, who also participated in hearing the post-verdict motions, stated in his opinion disposing of those motions:

"This Court did not even hear the statement and does not recall being made aware of said incident until it was raised at post trial motions."

**6.** Hooks explained at the hearing on post-verdict motions that he meant he could not deny shooting the victim because he had done so and was guilty of that. At trial, Hooks testified he shot the victim and attempted to establish he did so in self-defense. Also, Hooks had admitted to police that he shot the victim.

The opinion of the post-verdict motion court relied, inter alia, on an analysis which considered appellant's statement as meaning only that he had shot the victim, as he later testified to at trial, and that the statement indicated no real intention to admit criminal responsibility as the matter was scheduled for a nonjury trial. The instant situation differs materially from that presented in *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978), where *Badger* expressed a clear intent to admit criminal responsibility during a guilty plea colloquy before he was called to trial.

First, the trial judge cannot be held to have erred for failing to recuse himself *sua sponte* because of a statement by appellant when he had no knowledge of the statement having been made.

Second, as to the claim of ineffective counsel, our analysis begins with the tests found in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). If counsel's failure to seek recusation does not constitute a failure to bring to the attention of the court an issue or arguable merit, then counsel cannot be held ineffective. On the other hand, if counsel's failure constitutes a failure to raise an issue of arguable merit, then we must determine whether counsel's decision not to raise the issue had some reasonable basis designed to effectuate appellant's interests.

The basis for a request for recusation would have been that the court's impartiality may have been effected by its knowledge of appellant's statement, "I have to plead guilty." Since the court had no such knowledge, no basis for such a request, in fact, existed. Hence, such a request would not have presented the court with an issue of arguable merit.[7] Accordingly, counsel cannot be held ineffective for failing to make the request.[8]

Judgment of sentence affirmed.

7. We would be less than candid if we did not acknowledge that a request might also have brought the statement to the court's attention and thereby have given the court the knowledge necessary to create the possibility of the court's impartiality being effected by the incident and thus create an issue of arguable merit. Cf. *Commonwealth v. Badger*, supra. But counsel has no obligation to provide the court with information which might prejudice it towards her client.

In any event, regardless of counsel's subjective reasons for not requesting recusation, the court in fact had no knowledge, and thus, as an objective matter, no issue of arguable merit would have been presented by a mere request for recusation.

8. We note that our analysis herein is not to be confused with an inquiry into prejudicial effect, see generally *Commonwealth v. Badger*, supra; rather, we here focus on the court's lack of knowledge. Under circumstances such as here presented, knowledge must exist before the possibility of prejudice can be said to result from it.

POMEROY, J., did not participate in the consideration or decision of this case.

NIX, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joined.

ROBERTS, Justice, dissenting.

I join in Mr. Justice Manderino's dissenting opinion. Additionally I dissent from the majority's disposition of appellant's claim that trial counsel was ineffective for failing to request recusal of the trial judge. On the basis of the trial judge's post-trial statement in his opinion that he did not hear appellant say "I have to plead guilty," the majority further concludes that even if such a request would have been meritorious, trial counsel had some other reasonable basis for not raising it. This analysis is misdirected. In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), and in all ineffectiveness cases since then, this Court has held that ineffectiveness claims should not be reviewed from "hindsight." Rather, the proper analysis is whether trial counsel had some reasonable basis for taking the action he did at the time his decision was made. At the time appellant made his potentially prejudicial remark, trial counsel did not know, and could not be expected to know, that the trial judge did not hear it. Thus, trial counsel's decision not to request recusal could not be based on the assumption that the trial court was unaware of appellant's comment. In these circumstances, there is no reasonable basis to justify trial counsel's decision not to request recusal.

MANDERINO, J., joins in this dissenting opinion.

MANDERINO, Justice, dissenting.

The appellant argues that the trial judge should have recused himself because earlier he had heard the defendant

remark "Well, I have to plead guilty." The majority argues that there is no need to consider the prejudicial effect of the comment because the trial judge *in his opinion* disposing of post-verdict motions stated that he did not recall the comment until the issue was raised in post-verdict motions. The opinion of a trial judge, however, is not evidence as to what occurred in the courtroom. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). The official transcript is the proper source to determine what was said in the courtroom. Prescribed procedures for amending an inaccurate transcript were not followed in this case. Pa.R.A.P. 1926. The statement by the trial judge in his opinion involves a matter of credibility which may involve among other things an issue of memory. The trial judge can not act as a fact finder as to whether a comment was made when relying on his own "testimony" outside of the hearing procedures provided by law for correcting a transcript.

ROBERTS, J., joins in this dissenting opinion.