Commonwealth *v*. Lawrence, Appellant.

Argued September 27, 1967. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

*W. Robert Thompson,* with him *John E. Baily,* and
*Thompson and Baily,* for appellant.

*W. Bertram Waychoff,* District Attorney, for Com-
monwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 3, 1968:
Charles David Lawrence was convicted by a jury in
Greene County of murder in the second degree. Post-
trial motions in arrest of judgment or for a new trial
were denied and a sentence of ten to twenty years im-
prisonment was imposed. Lawrence appeals from the
judgment of sentence.

Appellant's prime contention is that the evidence is
insufficient to sustain the conviction, and, therefore,
the judgment should be arrested. In evaluating the cor-
rectness of this position, we must consider the entire
record and view the testimony in the light most favor-
able to the Commonwealth. Act of June 15, 1951, P. L.

585, 19 P.S. §871; *Commonwealth v. Phillips,* 372 Pa. 223, 93 A. 2d 455 (1953); *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963); *Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965). "The test of the sufficiency of the evidence is whether accepting as true all the evidence upon which, if believed, the jury could have properly based its verdict, such evidence is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged." *Commonwealth v. Gockley,* 411 Pa. 437, 440-441, 192 A. 2d 693, 695 (1963).

As to the fact that a homicide was committed, the record discloses the following:

On Monday, January 2, 1967, the dead body of Albert Voithofer was found in a dry creek bed near a secluded dead-end road outside of Carmichaels, Pennsylvania. The head was covered with a mass of congealed blood coming from a stellate wound of the scalp on the top rear of the head. The skull had suffered a compound fracture and was partially imbedded in the brain. The sagittal sinus vein was ruptured, leading to profuse bleeding. The body was covered with bruises and the second bone of the middle finger of the left hand was broken. The trousers and underpants were down at the ankles with the lower part of the body exposed. The coat or outside jacket was pulled up underneath the armpits and over the head. An eighty foot long trail of blood, brush burns on the buttocks of the body, and fibers of cloth on a wire fence indicated that Voithofer had been dragged over the fence to the creek from a nearby road where his abandoned automobile was found and had been seen parked since early evening of the previous Saturday, December 31, 1966. The weapon used to inflict the injury to the head could not be found in the vicinity. The victim's empty wallet was discovered on the road some thirty feet from his automobile.

To establish appellant's connection with the crime, the Commonwealth relied at trial upon admissions he made to relatives whom he visited shortly after the homicide. At trial Lawrence admitted the killing, but plead self-defense or excusable homicide.[1]

From Lawrence's admissions following the occurrence and his testimony at trial, the following pertinent facts appear:

Lawrence and the deceased were complete strangers until they met at a bar in Carmichaels at about noon on Saturday, December 31, 1966. Following some drinking, the deceased made an immoral reference to Lawrence's girl friend and a heated argument ensued. Later the parties made up and at about 4:40 p.m. Voithofer drove Lawrence to his home about three miles outside of town, where Lawrence lived alone as a tenant farmer. On the way Voithofer proposed that Lawrence commit an act of sodomy upon him. Lawrence refused. When Lawrence arrived at his destination and left the automobile, Voithofer grabbed him, but he broke loose and went about his work around the farm.

Voithofer then drove back to town, but about one-half hour later returned to the Lawrence place, suggested they forget their differences, take a ride and continue their drinking. Lawrence agreed and entered the automobile. Instead of driving to a bar, as suggested, Voithofer drove to the secluded spot, described before, stopped the automobile and again proposed that Lawrence commit an act of sodomy. Lawrence jumped out of the automobile and went to the rear thereof

---

[1] In the briefs this is incorrectly referred to as justifiable homicide. A justifiable homicide is one committed either by command of, or at least with the permission of, the law, e.g., execution of a convicted criminal, apprehension of an escaping felon, etc. An excusable homicide is one committed either *per infortunium* (i.e., accidentally) or *se defendendo* (i.e., in self-defense). IV Blackstone, Commentaries, *178-*186.

where the parties engaged in a violent fight. Lawrence was fifteen years younger than Voithofer and about forty pounds lighter in weight. Both were in good physical condition.

Voithofer first grabbed Lawrence around the throat and the latter kicked him in the crotch to break the hold. Punches were exchanged and Voithofer was knocked to the ground. As he came up in a crouching position as if to rush Lawrence, the latter picked up "a stick" and hit him over the head with sufficient force to render him unconscious. Lawrence then dragged Voithofer, unconscious but still alive, from the roadway to the creek bed eighty feet away and left the scene.

Lawrence then hitchhiked to his sister's home three miles away and told about being in a fight. No one was informed of Voithofer's plight. Evidence was also introduced to show that whereas Lawrence was broke a few hours before the fatal fight, immediately thereafter he was seen in possession of at least eight dollars.

One is legally excused from taking another's life if it is necessary to do so in order to prevent a felony such as sodomy attempted by force or surprise. See *Commonwealth v. Emmons,* 157 Pa. Superior Ct. 495, 43 A. 2d 568 (1945) ; 40 C.J.S. Homicide §101 (1944). One is also legally excused if he takes another's life where it is necessary to do so in order to protect his own life or to save himself from great bodily harm or under circumstances reasonably giving rise to fear of death or great bodily harm. See *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936), and *Commonwealth v. Collazo,* 407 Pa. 494, 180 A. 2d 903 (1962). And where one free from fault in bringing on the difficulty is dangerously assaulted in his own dwelling by one not a member of the household, he need not retreat, but may stand his ground and meet deadly force with deadly force to save his own life or to protect him-

self from great bodily harm, *Commonwealth v. Wilkes,* 414 Pa. 246, 199 A. 2d 411 (1964); *Commonwealth v. Fraser,* 369 Pa. 273, 85 A. 2d 126 (1952). However, this is not the rule in Pennsylvania where one is attacked outside of his own dwelling. Under such circumstances, the controlling rule is enunciated in *Commonwealth v. Collazo,* supra, at 501-502, 180 A. 2d at 907, wherein we stated, quoting from *Commonwealth v. Breyessee,* 160 Pa. 451, 456, 28 A. 824, 825 (1894): "Life may be lawfully taken in self-defense; but it must appear that he who takes it was in imminent danger of death or great bodily harm and that no other way of escape from the danger was open to him. It is the duty of one who is assailed to flee, if flight is possible; and it is only when he is persuaded that he must suffer death or grievous bodily harm at the hands of his assailant, or take the life of his assailant that he may save his own, that he can justify his act as done in self-defense." See also, *Commonwealth v. Mitchka,* 209 Pa. 274, 58 A. 474 (1904); *Commonwealth v. McKwayne,* 221 Pa. 449, 70 A. 809 (1908).

Whether the taking of Voithofer's life by Lawrence under the circumstances presented was legally excusable was a clear question of fact for the jury, and it was correctly presented by the trial court to the jury to resolve.

But, it is argued, in no event could appellant be convicted of murder, since the facts manifest a complete absence of malice, a necessary ingredient of murder.

It is true that malice, express or implied, is an absolute essential of murder. However, legal malice may be inferred and found from the attending circumstances. It consists either of an express intent to kill or inflict great bodily harm, or of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty," in-

dicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life.[2] See *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913 (1959), and *Commonwealth v. Carroll,* 412 Pa. 525, 194 A. 2d 911 (1963). The absence of justification or excuse also appears to be part of the definition of malice, R. M. Perkins, A Reexamination of Malice Aforethought, 43 Yale L. J. 537, 567-68 (1934), although this circumstance might be thought of as related to the *actus reus* of murder.

A blow to the head with a hardwood stick followed by a dragging of the victim for eighty feet and an abandonment of the unconscious, half-naked victim on a winter night in an isolated spot when he is breathing, but bleeding profusely, is clearly sufficient to support an inference that the actor intended the death or great bodily harm of the victim or that the actor was recklessly indifferent to these consequences. Since circumstances of justification or excuse were not established, malice is clearly indicated.

Finally, appellant contends that the sentence was too severe and unconscionable. The sentence of ten to twenty years at separate and solitary confinement is within the range of penalties provided for second degree murder by the Act of December 1, 1959, P. L. 1621, 18 P.S. §4701. No reason is suggested to show that the sentence imposed was undeserved except that the district attorney prior to trial was willing to accept a guilty plea to voluntary manslaughter, which carries a lighter penalty. This is irrelevant to the question of whether the trial judge imposed a proper sentence. The court is not bound by the actions of the district attorney in this respect. We find nothing in the record to warrant our interference with the sentence imposed.

Judgment affirmed.

---

[2] See generally, Comment, 114 U. Pa. L. Rev. 495 (1966).