334 A.2d 610
**COMMONWEALTH of Pennsylvania**
**v.**
**Kenneth BOYD, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1974.

Decided March 18, 1975.

18

20

Alexander Hemphill, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., John H. Isom, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Mark Sendrow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-
ERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

In this appeal, appellant Kenneth Boyd presents a mul-
tifaceted attack upon the validity of his conviction of
murder in the second degree. Boyd was tried before the
court sitting without a jury on February 28, 1974.
Post-verdict motions were filed but were later with-
drawn. Appellant was sentenced to five to 20 years im-
prisonment. Subsequently, Boyd obtained new counsel
and an appeal was mistakenly filed in the Superior Court
and then properly in this Court. We remanded to the
trial court for the filing of post-trial motions. Post-trial
motions were filed accordingly and denied. This appeal
ensued.[1] We affirm.

Appellant first contends that there was insufficient ev-
idence to sustain a verdict of murder because the Com-
monwealth failed to establish that he acted with malice.
The Commonwealth's evidence consisted almost entirely
of appellant's statement to the police. Appellant related
that he arrived at the clandestine gambling house where
the shooting occurred at about 1:00 a. m. He continued:

"I sat down to watch the people who were still gam-
bling in the dining-room. Then James Blount [the de-
ceased] came in with 2 girls I never saw before.
James started talking real loud with a guy who was al-
ready there. I don't know this guy's name. I asked
the both of them to hold down the noise because the
people who were gambling were making enough noise
already. This guy James Blount called me out of my
name. He said, 'Motherfucker, you been selling wolf
tickets, it's about time for you to get straightened out.'

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31,
1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

Then the both of us started arguing. Then we started swinging at each other. While we were fighting my gun slipped from my waistband and fell to the floor. Then both of us started reaching for the gun at the same time. I got the gun and when we came up off the floor the gun went off. The gun landed on the steps going up to the 2nd floor. James was sitting on the sofa. Then I went and got the gun off the steps. James started sagging to the floor. People started asking was he shot, I said he wasn't shot. He was still moving and mumbling something. Then he fell to the floor. Then we started seeing the blood come out of his mouth. Lois [the proprietress of the gambling house] told me that he would have to get out of here. Then me and Fisher carried him out to his car that was parked in front of the house. When we came back inside, Lois said that we would have to get him from around her house. So I went to the car and got his keys out of his pocket and drove the car around the corner and parked it. I came back around to the house. . . . "

At trial, appellant's testimony was virtually identical to his statement except that he denied having control of the gun when the fatal shot was fired. Two eye-witnesses called by appellant substantiated appellant's story in most respects; however, they apparently did not actually see the shooting. Appellant contends that this evidence does not establish that he maliciously shot James Blount.[2]

"To sustain a conviction of murder of either degree, the evidence must establish that the killing was committed with malice. *Commonwealth v. McFadden*, 448 Pa.

2. "In reviewing the sufficiency of the evidence to support a conviction we must review the entire record, viewing the evidence in the light most favorable to the Commonwealth. We must determine whether a finder of fact could reasonably have found all of the elements of the crime had been proven beyond a reasonable doubt."
*Commonwealth v. Young*, 446 Pa. 122, 123, 285 A.2d 499, 500 (1971) (citations omitted).

277, 292 A.2d 324 (1972)." *Commonwealth v. Coleman,* 455 Pa. 508, 510, 318 A.2d 716, 717 (1974). "[Malice] consists either of an express intent to kill or inflict great bodily harm, or of a ' "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty" ' indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963)." *Commonwealth v. Chermansky,* 430 Pa. 170, 175, 242 A.2d 237, 240–41 (1968). See *Commonwealth v. Coleman,* supra. "Legal malice may be inferred and found from the attending circumstances of the act resulting in death. *Commonwealth v. Bowden,* Pa., 309 A.2d 714 (1973)." *Commonwealth v. Coleman,* supra, at 510, 318 A.2d at 717; *Commonwealth v. Chermansky,* supra; *Commonwealth v. Lawrence,* 428 Pa. 188, 193, 236 A.2d 768, 771 (1968).

"Malice may be inferred from the use of a gun upon a vital part of the body, and the finder of fact is not required to ignore this inference merely because the defendant testifies that he did not intend to take a person's life. *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A.2d 359 (1950)." *Commonwealth v. Robinson,* 452 Pa. 316, 323, 305 A.2d 354, 358 (1973). In *Commonwealth v. Whitaker,* 440 Pa. 143, 269 A.2d 886 (1970), Whitaker admitted shooting the deceased while the two were alone. "Whitaker testified that during the argument in the bedroom, Mrs. Childs [the deceased] obtained the revolver from a closet shelf and that as he tried to take it from her, it accidentally discharged. Despite Whitaker's testimony to the contrary, the jury was warranted in finding that he intentionally fired the shot which caused Mrs. Childs's death. And the jury could then also infer that he did so maliciously." Id. at 145–46, 269 A.2d at 887–88.

Here, appellant admitted in his statement that at the moment that the fatal shot was fired, he had sole

control over the gun. The trial court was entitled to infer from this fact and the fact that the gun was used upon a vital part of the body that Boyd acted maliciously.

The inference that Boyd acted with malice is also supported by appellant's failure to give aid to the victim after the shooting. In *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968), Lawrence and the victim fought when Lawrence refused to perform an act of homosexual sodomy upon the victim. As the victim prepared to rush Lawrence, Lawrence struck him with a blunt object and rendered him unconscious. Lawrence then dragged the unconscious body to a stream bed, apparently ripping the victim's clothing off in the process, and left him there, exposed to winter's elements. The Court concluded that malice was established.

> "A blow to the head with a hardwood stick followed by a dragging of the victim for eighty feet and an abandonment of the unconscious, half-naked victim on a winter night in an isolated spot when he is breathing but bleeding profusely, is clearly sufficient to support an inference that the actor intended the death or great bodily harm of the victim or that the actor was recklessly indifferent to these consequences. Since circumstances of justification or excuse were not established, malice is clearly indicated."

Id. at 194, 236 A.2d at 771–72.[3]

■ Appellant contends that the record does not establish facts that permit the inference made in *Lawrence*. While appellant testified that at the time of the shooting he did not believe that Blount had been hit, the court was entitled to disbelieve this testimony.[4] Appel-

3. See also *Commonwealth v. Chapman*, 359 Pa. 164, 58 A.2d 433 (1948). In that case, the Court ruled that malice may be inferred from the fact that after the fatal shot had been fired, the defendant reloaded his rifle and fired a second bullet into the body.

4. "[I]t is the exclusive province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded their

lant admitted that immediately after the shot was fired, Blount slipped to the floor and began to bleed from the mouth. Furthermore, according to appellant's statement, it seemed obvious to others present that Blount had been wounded. Therefore, we conclude that the trier of fact could permissibly believe that when Boyd carried Blount, who, Boyd testified, was still breathing, from the house and placed him in the car, he knew that Blount had been shot and was in need of medical attention. Thus, on this record, the court could infer malice from appellant's failure to attempt to obtain aid for the wounded man.

Appellant next asserts that his waiver of his rights to a jury trial,[5] to confront witnesses,[6] and to challenge the admission of his statement to the police [7] were not knowingly and intelligently [8] made because he was not advised on the record of the possible prison sentences which he might receive if convicted. Because the waiver of jury trial presents different considerations from those involved in the other waivers, the jury trial waiver will be analyzed separately.

In *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973), this Court held that a voluntary waiver of jury trial will not be found to be knowing and intelligent unless the record indicates that the defendant "knew the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving." Id. at 373, 312 A.2d at 600. We then

testimony." *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972). And the fact finder "can believe all, part or none of the evidence presented." *Commonwealth v. Williams,* 450 Pa. 158, 162, 299 A.2d 643, 645 (1973).

5. Pa.Const. art. I, §§ 6, 9; U.S.Const., amend. VI.

6. Pa.Const. art. I, § 9; U.S.Const., amend. VI.

7. Pa.Const. art. I, § 9; U.S.Const., amend. V.

8. See *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

enumerated the "essential ingredients" of which a defendant must be informed: "that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." Id. Nowhere did we indicate that a defendant must be informed of the possible sentences he might receive.

In *Commonwealth v. Henderson*, 450 Pa. 122, 298 A.2d 891 (1973), the appellant asserted that his waiver of jury trial was not knowing and intelligent because the court failed to question him during the waiver colloquy about his claim of self-defense. This Court held that the failure of the trial court to so question the defendant was not error.

> "A defendant's waiver of a jury trial does not affect the burden of proof on the subject of self-defense. Where the defendant waives a jury trial in a criminal prosecution the trial judge, as the jury, must find the facts and determine the credibility of the witnesses. The trial judge, as the trier of fact, is bound by the same legal principles that bind a jury on burden of proof. Therefore, no error was committed when the trial judge omitted any reference to self-defense in his waiver colloquy. Appellant relinquished no rights regarding his defense of self-defense when he waived his right to a jury trial."

Id. at 125, 298 A.2d at 892.

■ Similarly, in the present case, appellant's waiver of trial by jury did not affect in any way the sentencing alternatives available to the court. Because appellant "relinquished no right" regarding sentencing it was unnecessary for the court to inform him of the sentencing alternatives.[9]

9. Compare *Commonwealth v. McNeil*, 453 Pa. 102, 106, 305 A.2d 51, 53 (1973),
 "[W]e note that questioning or advising a defendant as to the permissible range of sentences is an important element of the guilty plea colloquy."

■ Likewise, appellant's waiver of his right to confront witnesses and to seek to have his statement suppressed did not affect the sentencing alternatives. Therefore, there was no need to put on the record evidence that appellant knew of the potential sentences when he waived his rights.

■ Moreover a trial court would impermissibly intrude upon the function of defense counsel if it interrupted the trial to discuss with the defendant the effect of a waiver of the right to confront witnesses or to object to the admission of evidence. ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function § 5.2(b) at 237–38 (Approved Draft, 1971) provides:

"The decision on . . . whether . . . to conduct cross-examination, . . . what trial motions would be made and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client."

Comment b to that section states:

"In general, . . . it may be said that the power of decision in matters of trial strategy and tactics rests with the lawyer. See *Henry v. United States*, (Mississippi) [379 U.S. 443, 85 S.Ct. (564), 565, (13 L.Ed.2d 408) (1965)] . . . . [T]he lawyer must be allowed to decide whether to object to the admission of evidence, . . . whether and how a witness should be cross-examined."

A trial court which at every decisional phase of a trial, interrupted the proceeding to explain to the accused all the ramifications of a particular strategic choice could wreak havoc upon counsel's tactical planning. Moreover, we do not believe that such interruptions would benefit the defendant. "Many of the rights of the accused, including constitutional rights, are such that only trained experts can comprehend their full significance and an ex-

planation to any but the most sophisticated client would be futile." Standards Relating to the Defense Function, supra § 5.2, comment b, at 240.

Appellant finally asserts that he was deprived of the effective assistance of counsel. We have on myriad occasions repeated the standard of review employed where an appellant asserts he was tried without the effective assistance of counsel.

"Our task in cases of this nature therefore encompasses both an independent review of the record, and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. Perhaps Brubaker v. Dickson, 310 F.2d 30, 38 (9th Cir. 1962), cert. denied, 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963), best describes this necessary process: 'Facts are alleged from which it would appear that those potential defenses would have suggested themselves to a reasonably diligent trial counsel. The defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice.' We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had *any reasonable basis*."

*Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) (footnotes and citation omitted).

The decisions allegedly made by trial counsel asserted to have no reasonable basis are the decisions to waive jury trial, the failure to insist on confronting certain prosecution witnesses, and the failure to seek suppression of appellant's statement. We will consider these claims seriatim.

Appellant's first claim of ineffective assistance of counsel is contained in a single sentence: "A competent defense attorney would, in this kind of case, insist on a jury trial." [10] We cannot find in this bald assertion any basis upon which to find ineffectiveness of counsel.

 Section 5.2(a) of the ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function at 237–38 (Approved Draft, 1971) provides:

"Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what pleas to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf."

The comment to this section provides in part:

"In making each of these decisions—whether to plead guilty, whether to waive jury trial and whether to testify—the accused should have the full and careful advice of his lawyer. Although counsel should not demand that his own view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client. Ultimately, however, because of the fundamental nature of these three decisions, crucial in such basic matters governing his own fate, the decisions on these matters belong to the accused."

Because "the decision to waive a jury trial is ultimately and solely the defendant's," *Commonwealth v. Stokes,*

10. Brief for Appellant at 8.

450 Pa. 167, 173 n.1, 299 A.2d 272, 276 n.1 (1973), a defendant must bear the responsibility for that decision. Counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance of counsel only when 1) counsel interferes with his client's freedom to decide to waive a jury trial, cf. *Commonwealth v. Stokes,* supra, or 2) appellant can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right. Where an appellant merely claims, as in the present case, that his decision was a strategic error, and can point to no specific incidents of counsel impropriety, he must bear the responsibility for that decision and cannot shift the blame to counsel.

 Appellant next claims that counsel erred by waiving the appellant's right of confrontation and permitting the district attorney to read the statements of the medical examiner and of the police officers who found the victim's body. We cannot conclude that counsel's decision had no "reasonable basis designed to effectuate his client's interests." Trial counsel could reasonably decide that in this case nothing would be gained by having these witnesses in court and that he would not be able to develop additional facts helpful to his client on cross-examination.

 Appellant argues, however, that competent counsel would have proceeded on defenses of provocation, intoxication, and self-defense and presentation of these defenses would require cross-examination of the police officers and the medical examiner. Even if we could comprehend how these witnesses could assist in developing these defenses, we would not find ineffective assistance of counsel. Appellant's contention is tantamount to a claim that trial counsel's choice of a defense theory was incompetent. We have examined the record and we cannot conclude that " '[t]he defense actually tendered was so insubstantial in relation to those not offered as to cast

doubt upon the hypothesis that trial counsel made a deliberate informed choice.' " *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. at 604, 235 A.2d at 352. We therefore conclude that trial counsel's selection of a defense theory did not amount to ineffective assistance of counsel.

Finally appellant contends that trial counsel erred in failing to seek suppression of appellant's statement to the police. Appellant claims that his confession was involuntary because, according to the testimony of the police officer offering the statement, appellant was questioned for ten to twelve hours before he gave his statement. In order to determine whether counsel's decision to forego a suppression motion was reasonable, we must first review the bases upon which a statement may be suppressed because it is involuntary.

"Because '[n]o single litmus-paper test for constitutionally impermissible interrogation has been evolved . . . ,' *Culombe v. Connecticut,* 367 U.S. 568, 601, 81 S.Ct. 1860, 1878, 6 L.Ed.2d 1037 (1961); *Commonwealth v. Eiland,* 450 Pa. 566, 573–574, 301 A.2d 651, 654 (1973), we must in each case view the 'totality of the circumstances.' *Commonwealth v. Hallowell,* 444 Pa. 221, 226, 282 A.2d 327, 329 (1971); *Commonwealth v. Holton,* 432 Pa. 11, 17, 247 A.2d 228, 231 (1968). Circumstances which must be considered include the accused's physical and mental condition, the delay between arrest and arraignment, the attitude of the police, and other 'diverse pressures.' *Culombe,* supra, 367 U.S. at 602, 81 S.Ct. at 1879; *Eiland,* supra, 450 Pa. at 573–574, 301 A.2d at 654. Moreover, this Court has emphasized that when the question of voluntariness passes beyond the realm of physical coercion and into degrees of psychological coercion, the most careful attention will be afforded to any facts, circumstances, or events tending to overbear an accused's

will. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149, 239 A.2d 426, 430 (1968)."

*Commonwealth v. Simms,* 455 Pa. 599, 602–03, 317 A.2d 265, 267 (1974) (footnotes omitted, omissions in original).

The only fact alleged by appellant as establishing involuntariness is the lengthy period of interrogation. On the other hand, the witness offering the statement testified that at the time appellant gave his statements he appeared "normal" and had been given a meal. Appellant testified and was questioned about the statement. He never indicated during his testimony that he was compelled in any sense to give this statement or that his will had been overborne. See *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Under the "totality of the circumstances" test, the fact that appellant was questioned for an extended period would be insufficient without more to establish that appellant's will was overborne and the statements were not freely given. Compare *Commonwealth v. Simms,* supra; *Commonwealth v. Davenport,* 449 Pa. 263, 295 A.2d 596 (1972). Therefore on the facts contained in the record and the assertions in the brief a suppression motion would have been futile. It must therefore be concluded that trial counsel's decision not to seek suppression of the statement did not constitute ineffective assistance of counsel.[11]

Judgment of sentence affirmed.

11. Appellant also contends that trial counsel's withdrawal of post-trial motions constituted ineffective assistance of counsel and that his waiver of the right to file such motions was not knowing and intelligent. Because appellant was permitted to file motions pursuant to the order of this Court, we need not consider these issues.

Appellant also appeals his conviction for a firearms violation. The indictments upon which appellant was tried included, in addition to the murder count, an indictment for carrying firearms on a public street. Appellant was convicted on this count and given a suspended sentence. Subsequently in its opinion the trial court

NIX, J., filed a concurring opinion in which MAN-DERINO, J., joins.

NIX, Justice (concurring).

I cannot agree with that portion of the majority opinion which holds that the maximum permissible sanction that may be imposed for a given offense is not a factor of which the accused should be aware in order to intelligently decide whether to waive his right to a jury trial.

Waiver of the right to a jury trial is unquestionably the waiver of a substantial constitutional right. In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1967), the United States Supreme Court stated: " . . . we believe that trial by jury in criminal cases is fundamental to the American scheme of justice . . . ". *Id.* at 149, 88 S.Ct. at 1447. Accordingly for the waiver of a constitutional right the court must be assured that the accused is aware of all the material factors necessary to make an intelligent decision.

Case law has recognized the close relationship between the right to trial by jury and the gravity of the offense. Courts have held in determining when the right to trial by jury must be given an accused, the critical factor to be considered is the nature of the possible sanction to be imposed. *Commonwealth v. Mayberry,* 459 Pa. 91, 97, 327 A.2d 86, 89 (1974). See also *Codispoti v. Pennsylvania,* 418 U.S. 506, 511, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974) ; *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974); *Baldwin v. New*

stated that "[t]he demurrer to this bill [for carrying firearms on a public street] should have been sustained inasmuch as to this charge the corpus delicti had not been proved prior to the introduction of the confession." However, appellant's conviction on the firearms violation was never removed from his record. Subsequently, when appellant brought his post-trial motions he inquired about the status of this conviction. The court thereupon arrested judgment on this charge. This order has been entered on the docket of appellant's case. Since this conviction has been set aside we need not consider it.

34

*York*, 399 U.S. 66, 68–69, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Frank v. United States*, 395 U.S. 147, 149–50, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); *Commonwealth v. Patterson*, 452 Pa. 457, 463, n. 3, 308 A.2d 90, 93–94, n. 3 (1973); *Commonwealth v. Bethea*, 445 Pa. 161, 282 A.2d 246 (1971); *Commonwealth v. Fletcher*, 441 Pa. 28, 269 A.2d 727 (1971). Indeed in this Commonwealth, it was impermissible to waive a jury trial where the death penalty might be imposed. See Comment, Rule 1101, Pennsylvania Rules of Criminal Procedure, 19 P.S. Appendix (1974).

For the layman particularly, the best measure of the seriousness of the offense is the maximum sanction that may be imposed. This is especially true at this time in Pennsylvania where we have recently adopted a new Crimes Code which provides for offenses which were not formerly known under our law. See Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1 et seq., 18 Pa. C.S. § 101 et seq. (1973). Accordingly, I would hold that the accused should also be advised of the sanction that may be imposed as one factor necessary in making the decision whether to waive a trial by jury.

I concur in the result reached by the majority in the instant appeal, however, because the public traditionally is well aware of the seriousness of the offense here charged, to wit, murder. Under these circumstances the omission, in my judgment, was harmless error.

MANDERINO, J., joins in this opinion.