J-S68018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTISE JAMES HOLT | : | |
| | : | |
| Appellant | : | No. 536 WDA 2019 |

Appeal from the PCRA Order Entered March 15, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013629-2014

BEFORE:   GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 23, 2020**

Mattise James Holt appeals from the order, entered in the Court of Common Pleas of Allegheny County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After review, we affirm the PCRA order and vacate the SORNA order.

Holt was convicted on June 17, 2015, of rape and related offenses stemming from his rape of a minor female victim on two occasions.  Holt was sentenced on September 9, 2015, to an aggregate term of 208 to 416 months' imprisonment, followed by an aggregate term of 5 years' probation.  The court also required Holt to register for life as a Tier III sexual offender under the Sex Offender Registration and Notification Act ("SORNA").[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9799.10-9799.41.

On September 10, 2015, the trial court granted Holt's trial counsel, Scott Westcott, Esquire, leave to withdraw as counsel and appointed in his stead the Allegheny Office of the Public Defender. On October 8, 2015, court-appointed counsel filed a notice of appeal to this Court. On July 29, 2016, following a hearing, the court ordered that Holt be classified as a sexually violent predator ("SVP"). Holt filed a notice of appeal of that order on August 25, 2016. This Court consolidated Holt's appeals and, by memorandum decision dated December 8, 2017, affirmed Holt's judgment of sentence, but vacated his SVP designation because the trial court failed to make the necessary factual finding beyond a reasonable doubt pursuant to *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), appeal granted, 190 A.3d 581 (Pa. 2018). This Court remanded the case to the trial court for the sole purpose of issuing the appropriate notice to Holt under section 9799.23 of SORNA, informing him that he is required to register as a sex offender for life. The court entered the required order on February 1, 2018.

On May 22, 2018, Holt filed a *pro se* PCRA petition. The court appointed counsel, who filed an amended petition on August 27, 2018, followed by a second amended petition on November 26, 2018. The PCRA court held an evidentiary hearing on March 15, 2019, at the conclusion of which the court denied relief. Holt filed a timely notice of appeal followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Holt raises the following claims for our review:

1. Whether the [PCRA] court erred in dismissing [Holt's] second amended PCRA petition by not finding and ruling that [Holt] did not make a knowing, intelligent and voluntary waiver of his right to a jury trial due to trial counsel's misrepresentations?

2. Whether the [PCRA] court erred in dismissing [Holt's] second amended PCRA petition by not finding and ruling that [Holt's] trial counsel was ineffective due to failing to locate, interview and call [Holt's] mother as a witness?

Brief of Appellant, at 4 (unnecessary punctuation omitted).

We begin by noting our standard and scope of review of the denial of PCRA relief:

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level. The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Medina*, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (citations, quotation marks and brackets omitted).

Holt's claims both assert the ineffectiveness of trial counsel. Accordingly, we begin by noting that counsel is presumed effective, and it is a petitioner's burden to prove otherwise. *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011). In order to prove that counsel was ineffective, a petitioner must plead and prove each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable

probability of a different outcome if not for counsel's error." ***Commonwealth v. Grove***, 170 A.3d 1127, 1138 (Pa. Super. 2017) (citation omitted). A failure to plead or prove any prong will defeat an ineffectiveness claim. ***Id.*** Further,

> [a] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

***Commonwealth v. Ligon***, 206 A.3d 515, 519 (Pa. Super. 2019) (citation omitted).

Holt first claims that Attorney Westcott was ineffective for causing him to waive his right to a jury trial when that waiver was not knowing, intelligent and voluntary. In particular, Holt alleges that counsel "made multiple and material misrepresentations to [him] concerning his supposedly **certain** likelihood of success at a non-jury trial before [the Honorable Jill E. Rangos], which caused and induced [Holt] to involuntarily deviate from his original intent to proceed to a jury trial[.]" Brief of Appellant, at 23-24 (emphasis in original). Holt is entitled to no relief.

Our Supreme Court has long held that counsel's advice to waive a jury trial can be the basis for a successful claim of ineffective assistance of counsel only when: (1) counsel interferes with his client's freedom to decide to waive a jury trial or (2) the petitioner can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right. ***Commonwealth v. Boyd***, 334 A.2d 610, 617 (Pa. 1975). However, all that

is required for a valid jury trial waiver is that a defendant is informed "that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008) (citations omitted). When a petitioner seeks to collaterally attack his waiver of a jury trial on grounds that it was caused by the ineffective assistance of his trial counsel, he must demonstrate a reasonable probability that, but for counsel's constitutionally deficient service, he would not have waived his right to a jury trial. *Id.* at 704.

At his PCRA hearing, Holt testified on direct examination that, in the "bullpen" immediately prior to the commencement of his jury trial, Attorney Westcott told him that: (1) the assistant district attorney and arresting officer believed the charges against him to be false; (2) someone had spoken to Judge Rangos about his case; and (3) his case would be thrown out if he proceeded to a nonjury trial. *See* N.T. PCRA Hearing, 3/15/19, at 10-13. He also stated that he signed a written jury waiver form, but counsel did not explain it to him and he was unable to read at the time. *See id.* at 14. Holt testified that he would not have waived his right to a jury trial in the absence of Attorney Westcott's representations. *See id.* at 15.

On examination by the PCRA court, Holt testified that he lied during his oral waiver colloquy when he responded in the affirmative to the following questions from the court: (1) whether he could read and write the English language; (2) whether anyone had offered him anything in exchange for

waiving his right to a jury trial; and (3) whether anyone had forced, threatened or coerced him into waiving his right to a jury trial. *See id.* at 18, 25, 26 ("The Court: Okay. So now you're saying you lied? The Witness: Yes, ma'am.").

Holt's paramour, Roxanne Alexander, also testified at the PCRA hearing, stating that Attorney Westcott asked her to tell Holt to request a nonjury trial. Alexander testified that Attorney Westcott "said that—basically that him and the judge, they were cool, they were friends, and basically [Holt] didn't have nothing to worry about" and that Holt would be found not guilty if he accepted a nonjury trial before Judge Rangos. *Id.* at 29.

Attorney Westcott also testified at the PCRA hearing. Counsel testified that he had initially listed Holt's case for a jury trial, because it was his standard practice to do so in cases where he had not yet had the opportunity to thoroughly review the case and discovery. *See id.* at 50. He further stated that he never asked Holt to waive his right to a jury trial; rather, during a meeting with Holt at the county jail, Attorney Westcott "went over the analysis of this case with Mr. Holt, and [he] explained to him the pros and cons of a jury [trial] vis-à-vis a nonjury [trial]." *Id.* at 43. Attorney Westcott stated that it was Holt's decision to waive his right to a jury trial. *See id.* at 42. Attorney Westcott testified that, contrary to Holt's assertion, the decision to waive was not made "in the bullpen" on the day of jury selection, but rather beforehand. *Id.* at 45. Attorney Westcott had no recollection of ever having spoken to the arresting officer, and the arresting officer never told him that

he believed the victim to be untruthful. ***See id.*** at 46. Moreover, counsel testified that he never told Holt that if he opted for a nonjury trial, the court would acquit him. ***See id.*** at 42-43. Nor did Attorney Westcott suggest that he was friends with the judge. Rather, he testified he told Holt "I think we have a good professional relationship" but that he couldn't "guarantee anything." ***Id.*** at 45. Finally, Attorney Westcott testified that it would have been his practice to review the waiver form with his client before allowing him to sign it. ***See id.*** at 46.

The PCRA court noted that Holt and Attorney Westcott "testified to a considerably different version of events" and credited the latter's testimony. PCRA Court Opinion, 6/7/19, at 4. The court concluded:

> [Holt] asserts that he was duped by his trial counsel to choose a nonjury trial because of a secret relationship entitling him to special dispensation from the [c]ourt. These scurrilous accusations are not only unsubstantiated and untrue, they are refuted by trial counsel's testimony that he made no such promises and that no such relationship ever existed. Moreover, [Holt] has failed to argue in what manner the outcome of the proceedings would have differed had the case proceeded to a jury trial.

***Id.***

Upon review of the transcript of the PCRA hearing, we can discern no abuse of discretion on the part of the court in crediting counsel's testimony and denying relief.

In addition, prior to waiving his right to be tried by a jury, Holt completed a written waiver form and was thoroughly colloquied by the trial court as follows:

THE COURT: **Are you able to read, write and understand the English language?**

THE DEFENDANT: **Yes, ma'am.**

. . .

THE COURT: Do you understand that you're entitled under the Constitution of the Commonwealth of Pennsylvania as well as the United States Constitution to a trial by jury on these charges?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that if you choose to have a jury trial, you, along with Mr. Westcott and Mr. Hong-Barco, would participate in the selection of that jury from your peers. That is, members of Allegheny County selected by a computer from various approved lists?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that you would have the right to challenge members of the jury panel? That means that you would have the right to keep certain members of the jury panel from serving as jurors in your case.

THE DEFENDANT: Yes, ma'am.

THE COURT: Specifically, do you understand that you would have as many challenges for cause as the Court would approve. A challenge for cause is a showing of some good reason why you believe that a member of the jury panel could not serve as a fair or impartial juror in your case?

THE DEFENDANT: Yes, ma'am.

THE COURT: In addition to an unlimited number of strikes for cause, you would have seven preemptory challenges. A preemptory challenge is one in which you do not need to give any reason for striking a member of the jury panel and keeping them from serving as a juror in your case; do you understand that?

- 8 -

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that all jurors so selected would have to find and vote for your guilt before you could be adjudicated guilty. That is, their verdict would have to be unanimous?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that in a nonjury trial before a judge that the judge sits as the trier of facts. And much like a jury trial is bound by the same rules of evidence but it is a judge rather than the jury that determines your guilt or innocence from the evidence presented?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that in a jury trial, as in a nonjury trial before a judge, you do enter the courtroom cloaked in the presumption of innocence and that presumption remains with you at all times until such time that the Commonwealth should produce evidence for a judge or a jury to find you guilty beyond a reasonable doubt?

THE DEFENDANT: Yes, ma'am.

THE COURT: Specifically, before a judge or a jury could find you guilty, the Commonwealth must prove each and every element of the crimes beyond a reasonable doubt and as the defendant you bear no burden of proof; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you discussed with Mr. Westcott your intention to waive your right to a jury trial and proceed nonjury before me, understanding that it would be me who would decide your guilt or innocence from the evidence presented by the Commonwealth?

THE DEFENDANT: Yes, ma'am.

THE COURT: Knowing all that and having discussed this with Mr. Westcott, it is my understanding that you do wish to voluntarily waive your constitutional right to a jury trial and proceed before me without a jury; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand completely the proceedings here today?

THE DEFENDANT: Yes, ma'am.

THE COURT: **Has anybody forced, threatened, or coerced you into waiving your right to a jury trial?**

THE DEFENDANT: **No, ma'am.**

THE COURT: And you are satisfied with legal advice and services Mr. Westcott has provided?

THE DEFENDANT: Yes, ma'am.

THE COURT: **Has anybody promised you anything in exchange for waiving your constitutional right to a jury trial?**

THE DEFENDANT: **No, ma'am.**

THE COURT: I call your attention to the Waiver of Jury Colloquy, and this is the document I'm now showing you.

THE DEFENDANT: Yes, ma'am.

THE COURT: **You did have the opportunity to read this document and discuss it with Mr. Westcott?**

THE DEFENDANT: **Yes, ma'am.**

THE COURT: **You answered all of the questions in here honestly?**

THE DEFENDANT: **Yes, ma'am.**

THE COURT: And you indicated by adding your signature on the last page that you have read the entire document and you understand its full meaning; is that true?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is that your signature on the fourth page?

THE DEFENDANT: Yes, ma'am.

THE COURT: In addition to that, you've added your signature on the first page indicating that you do wish to waive your right to a jury and proceed nonjury; is that correct?

THE DEFENDANT: Yes, ma'am.

N.T. Waiver Trial, 5/18/15, at 5, 8-13 (emphasis added).

The trial court's colloquy was comprehensive and satisfied the prerequisites for a knowing, intelligent and voluntary waiver. *Mallory*, *supra*. Moreover, Holt's claim that trial counsel was ineffective for coercing him to waive his right to a jury trial requires accepting that he lied while under oath. It is well-settled that a PCRA petitioner "may not obtain post-conviction relief by claiming that he lied during his waiver colloquy." *Commonwealth v. Bishop*, 645 A.2d 274, 277 (Pa. Super. 1994); *see also Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) ("The longstanding rule of Pennsylvania law is that a defendant may not challenge his [colloquy] by asserting that he lied while under oath, even if he avers that counsel induced the lies."). As Holt's allegation of ineffectiveness is predicated on the notion that he lied during his waiver colloquy, his claim must fail.

Finally, Holt claims that trial counsel was ineffective for failing to call his mother, Peggy Holt, as a witness at trial. Holt asserts that: (1) the victim in this case recanted her allegations to his mother; (2) he advised counsel of the witness' existence; (3) the witness would have testified on his behalf; and (4) the absence of her testimony prejudiced him in that it would have called into question the veracity of the victim's testimony. Holt is entitled to no relief.

Counsel may be deemed ineffective for failing to call a witness where a petitioner proves that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or should have known

- 11 -

of the witness's existence; (4) the witness was prepared to cooperate and would have testified on petitioner's behalf; and (5) the absence of the testimony prejudiced petitioner. *Commonwealth v. Michaud*, 70 A.3d 862, 868 (Pa. Super. 2013).

Here, Holt testified at his PCRA hearing that he met with Attorney Westcott multiple times prior to trial and provided him with a list of witnesses to contact, including his mother. N.T. PCRA Hearing, 3/15/19, at 15. Peggy Holt testified that the victim, her granddaughter, came to her and told her that she had fabricated the rape claims against Holt because she was mad at him. *See id.* at 34. She further stated that she would have testified had she been called to do so, *id.*; however, she also stated that she was unaware that her son was on trial until he was sentenced. *See id.* at 35. On cross-examination, Holt testified that she never contacted the police regarding the alleged recantation or advised the victim to do so. *See id.* at 37-38.

Attorney Westcott testified that he contacted several witnesses prior to trial. *See id.* at 47. He stated that he could not specifically remember whether Holt asked him to contact his mother. *See id.* at 52. However, Attorney Westcott testified that, even if Holt had asked him to contact his mother, Attorney Westcott may ultimately have chosen not to present her testimony for credibility reasons. The following exchange occurred on cross-examination by the Commonwealth:

> Q. Is there any—sorry. Let me rephrase. Is there any skepticism about putting on a family member in a case such as this with concerns of credibility?

A. Absolutely. There's always going to be a bias, I believe, by the finder of fact that the family member's going to be biased in favor of the defendant.

Q. So it could be pretty reasonable that had you known about Ms. Holt and what she could have potentially testified to at the time of trial, that you may not have put her on simply for the fact that she may not be considered credible to the jury?

A. Yeah, I may or may not have depending on --

Q. Or to the Judge being the fact finder?

A. Yes. Every case is different, but because somebody's going to speak on behalf of the defendant, I don't believe it's automatically credible.

Q. **But in this case, if the petitioner had mentioned that the victim in this case recanted to his mom and that he wanted you to speak with her, you would have pursued that avenue. Correct?**

A. **There would be no reason why I would not have.**

Q. **At least to see what she had to say?**

A. **Correct.**

*Id.* at 53-54 (emphasis added).

The PCRA court concluded as follows:

If [Holt's mother] had exculpatory information, it makes no sense that she would not reach out to the police or to her son's attorney with this information. [Holt] did not tell [his mother] when the trial was scheduled or seek a continuance when she failed to appear. A far more likely scenario is that[,] had this witness existed at the time of trial, trial counsel, who had otherwise thoroughly prepared for trial, would have interviewed the witness and determined her credibility, or lack thereof. Moreover, the unsubstantiated, recently produced statement of recantation would be subject to significant and damaging cross-examination, and would be considered in the light of substantial evidence supporting [Holt's] conviction.

PCRA Court Opinion, 6/7/19, at 5.

Upon review, we can discern no abuse of discretion in the court's finding that Holt's version of events was simply not credible. Accordingly, because Holt failed to prove either that he informed Attorney Westcott of his mother's purported testimony prior to trial or that his mother was available and prepared to testify to the alleged recantation at the time of trial, he cannot establish Attorney Westcott's ineffectiveness. **Michaud**, **supra**. Therefore, Holt is entitled to no relief.

Although Holt has not challenged the legality of his sentence, our review of the record has revealed an issue with his SORNA registration requirements. The Pennsylvania Supreme Court held that those requirements constitute criminal punishment. **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). The **Muniz** Court declared SORNA's purpose to be punitive in effect, notwithstanding the General Assembly's intended purpose for the law as a civil remedy. **Id.** at 1218. We have since held **Muniz** created a substantive rule that retroactively applies in the collateral context. **Commonwealth v. Rivera-Figueroa**, 174 A.3d 674, 678 (Pa. Super. 2017). Given the timeliness of Holt's PCRA petition, we may review the legality of his sentence *sua sponte*. **See Commonwealth v. DiMatteo**, 177 A.3d 182 (Pa. 2018) (reiterating general rule that legality of sentence can be reviewed in context of timely PCRA petition); **Commonwealth v. Randal**, 837 A.2d 1211 (Pa. Super. 2003) (en banc) (explaining challenges to illegal sentence cannot be waived and may be raised by this Court *sua sponte*, assuming jurisdiction is proper; illegal sentence must be vacated).

Following *Muniz*, the Pennsylvania General Assembly enacted legislation to amend SORNA. *See* Act of Feb. 21 2018, P.L. 27, No. 10 ("Act 10"). Act 10 amended several provisions of SORNA, and also added several new sections, found at 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA provisions, effective June 12, 2018. *See* Act of June 12, 2018, P.L. 1952, No. 29 ("Act 29"). Through Act 10, as amended in Act 29, the General Assembly created Subchapter I, which addresses sexual offenders who committed an offense on or after April 22, 1996, but before December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75. Subchapter I contains less stringent reporting requirements than Subchapter H, which applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.13, 9799.54.

Here, Holt committed his registerable offenses between January 1, 2009 and January 14, 2014, a time period which straddles the operative dates for Subchapters H and I of SORNA. The trial court, as finder of fact, did not specifically determine the dates when Holt committed his offenses. Upon concluding the Holt was an SVP, the trial court notified Holt that he was subject to lifetime registration pursuant to section 9799.23 of Subchapter H.

In *Commonwealth v. Alston*, 212 A.3d 526 (Pa. Super. 2019), this Court held that where, as here, an appellant's offenses straddle the operative dates for Subchapters H and I and the factfinder fails to make a specific finding as to when the offenses occurred, the appellant is entitled to the lowest

punishment. **_See id._** at 530. Accordingly, we are constrained to vacate Holt's SVP order and remand the case to the trial court for the imposition of SORNA requirements under Subchapter I.

PCRA order affirmed. SORNA order vacated. Case remanded for further proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2020